UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Carmen M. Russo,

        Petitioner,

   -vs-

Anthony F. Zon,

        Respondent.
_____

**DECISION AND ORDER**

**No. 05-CV-0293T**

## I.   Introduction

*Pro se* petitioner Carmen M. Russo ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered November 27, 1995, in County Court, State of New York, Chautauqua County, convicting him, after a jury trial, of Murder in the Second Degree (New York Penal Law ("Penal Law") § 125.25(1)).   For the reasons stated below, the petition is denied.

## II.  Factual Background and Procedural History

### A.   Introduction

Sometime during the evening of July 11, 1993, Petitioner killed his wife, Sherryl Russo ("Sherryl" or "the victim"), in their home in Sheridan, New York, by stabbing her repeatedly about the neck and body.   Trial Transcript [T.T.] of 01/04/94, 6.   When state police arrived at the scene, they discovered the victim's

1

dead body in the home's master bathroom. Petitioner was laying nearby, in the master bedroom, with apparently self-inflicted wounds to his neck and wrists. T.T. of 01/04/94, 6-8. Petitioner was taken to Brooks Memorial Hospital, and subsequently transferred, via ambulance, to Erie County Medical Center ("ECMC") due to the nature and severity of his wounds. T.T. of 01/04/94, 6-8, 26. New York State Police Investigator Bernard Feldman ("Feldman") accompanied Petitioner in the ambulance en route to ECMC, and read Petitioner his rights from a <u>Miranda</u> card. T.T. of 01/04/94, 12. At the hospital where he was being treated for his injuries, Petitioner admitted to Feldman that he killed Sherryl. T.T. of 01/04/94, 19-20. Subsequently, Petitioner made similar admissions to two jailhouse informants, Thomas Bartlett, Sr. ("Bartlett, Sr.") and Thomas C. Bartlett, Jr. ("Bartlett, Jr."). T.T. of 09/20/95, 480-559.

A Chautauqua County grand jury charged Petitioner with one count of Murder in the Second Degree.

Before the trial, Petitioner moved to suppress his statements, as well as evidence that had been collected pursuant to a search warrant. A suppression hearing was held on January 4, 1994, and the trial court granted suppression of some of the evidence seized during the execution of the warrant, but denied suppression of Petitioner's statements. <u>See</u> Decision of Chautauqua County Court of 04/15/94 ["Suppression Decision"].

**B.   Petitioner's Trial**

At trial, the prosecution presented the testimony of various New York State troopers and investigators, several technical and medical expert witnesses, and several other individuals who testified to the marital problems between Petitioner and Sherryl.

The prosecution also called Bartlett, Sr., Bartlett, Jr., and Assistant District Attorney Neil Robinson ("Robinson"), who had prosecuted Bartlett, Sr.  Robinson testified that Bartlett, Sr. had not received any consideration in return for his testimony against Petitioner.

Petitioner did not testify at trial.

The defense called several witnesses.

The jury convicted Petitioner of Second Degree Murder.   On November 27, 1995, Petitioner was sentenced to an indeterminate term of 25 years to life in prison.

**C.   Petitioner's Motion to Vacate the Judgment**

On February 19, 1999, Petitioner moved to vacate his judgment of conviction pursuant to New York Criminal Procedural Law ("C.P.L.") § 440.10.   The Chautauqua County Court denied Petitioner's motion to vacate the judgment.  <u>See</u> Decision of the Chautauqua County Court of 05/19/99.  Petitioner sought permission to appeal the denial of his motion, which was denied on September 10, 1999.   <u>See</u> Decision of the Appellate Division, Fourth Department of 09/10/99.

**D. Petitioner's Direct Appeal**

On direct appeal, Petitioner, through counsel, raised three claims,[1] and an additional seven claims[2] in a supplemental pro se brief.

On May 2, 2001, the Appellate Division remitted Petitioner's case to the Chautauqua County Court for a reconstruction hearing to determine whether Petitioner was present for pre-trial, sidebar conferences, charge conferences, and handling of jury notes, and, if not, whether only questions of law or procedure were involved such that Petitioner's presence was not requested. People v. Russo, 283 A.D.2d 910, 911 (4th Dep't 2001). The Appellate Division rejected the rest of Petitioner's contentions on the merits. Id. at 911.

A reconstruction hearing was held on July 27, 2001 and January 17, 2002, and the Chautauqua County Court determined that a number of the conferences had taken place close enough to counsel table

---

[1] These claims are as follows: (1) that Petitioner's statements were illegally obtained and should have been suppressed; (2) that the prosecutor committed misconduct in summation; and (3) that he should be granted habeas corpus relief in the event the appeal is denied. See Appellant's Brief.

[2] These claims are as follows: (1) that his statements to police were improperly admitted at trial because they were involuntary and obtained in violation of his Miranda rights; (2) that the indictment was based on perjured testimony and should have been dismissed; (3) that he was denied his constitutional right to effective assistance of counsel during pre-trial and trial proceedings; (4) prosecutorial misconduct denied Petitioner due process and a fair trial; (5) judicial error/erroneous evidentiary rulings denied Petitioner due process and a fair trial; (6) that the evidence was legally insufficient and the verdict was against the weight of the evidence; and (7) that Petitioner's sentence was harsh and excessive, and he was penalized for exercising his right to a jury trial. See Appellant's Pro Se Brief.

that Petitioner could hear them, and that all of the conferences concerned legal or scheduling issues at which Petitioner had no right to be present. <u>See</u> Reconstruction Findings of the Chautauqua County Court of 09/09/02.

On February 11, 2004, the Appellate Division unanimously affirmed Petitioner's judgment of conviction. <u>People v. Russo</u>, 4 A.D.3d 777 (4th Dep't 2004). Petitioner made application for leave to appeal to the New York Court of Appeals, which was denied on May 14, 2004. <u>People v. Russo</u>, 2 N.Y.3d 806 (N.Y. 2004).

### E.    Petitioner's Habeas Corpus Petition

On or about April 25, 2005, Petitioner filed the habeas corpus petition presently before this Court, wherein he makes six claims. All of these claims, with the exception of his ineffective assistance of appellate counsel claim, are exhausted and properly before this Court. <u>See</u> 28 U.S.C. § 2254(b)(1)(A).

## III. General Principles Applicable to Habeas Review

### A.    The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an

unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id.

This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct.  The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003).  A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

### B.   Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion

requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

## IV. Petitioner's Claims

### 1. Ineffective Assistance of Counsel

#### a. Trial Counsel

Petitioner claims he was deprived of his Sixth Amendment right to effective assistance of trial counsel. Petitioner alleges, *inter alia*, that his trial counsel was inexperienced, ill-prepared and failed to present a clear and consistent defense. Petition [Pet.] ¶22A, 7(a)-(c); Memorandum of Law in Support of Petition for a Writ of Habeas Corpus [Mem.] 4-19. Petitioner raised this claim to the Appellate Division on direct appeal and the claim was rejected on the merits.

A petitioner claiming ineffective assistance of counsel must show that counsel's representation was fundamentally defective, and that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687 (1984). A Petitioner must establish both that counsel's performance was deficient and that he was prejudiced as a result of counsel's errors in order to obtain relief on an ineffective assistance of counsel claim. Id. at 687.

A petitioner seeking to establish constitutionally ineffective assistance of counsel must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)); see also, e.g., United States v. Jones, 918 F.2d 9, 11 (2d Cir. 1990) (holding that counsel's decisions should not be evaluated in hindsight).

Here, Petitioner makes numerous contentions concerning the alleged constitutionally deficient representation he received from trial counsel[3]. However, the gravamen of this claim is that trial counsel, without Petitioner's consent or knowledge, chose to pursue an extreme emotional disturbance ("EED") defense, which was antagonistic to Petitioner's position that he was actually innocent. Moreover, Petitioner contends that in pursuing the EED defense, counsel failed to investigate or research it and also failed to introduce evidence to require, as a matter of law, that an EED charge be given to the jury. According to Petitioner, this

---

[3] These contentions include, but are not limited to, the following: counsel failed to meet with Petitioner often enough before trial, counsel improperly convinced Petitioner not to testify, counsel failed to investigate the case, counsel was poorly prepared for trial, counsel did not subpoena potential trial witnesses, counsel did not present evidence that the victim's boyfriend may have committed the crime, counsel did not present evidence to refute the prosecutor's claims that Petitioner's wounds were self-inflicted, counsel failed to protect Petitioner's right to be present during material portions of the trial, counsel failed to object to inadmissible evidence, etc.

trial strategy -- straddling opposing defenses while failing to offer psychiatric or psychological evidence of EED -- was unreasonable and prejudiced the outcome of the trial.  Pet. ¶22A, 7(a)-(c);  Mem. 4-19.

The record, however, belies Petitioner's claim.  The record reflects that although trial counsel made reference to Petitioner's state of mind on the night of the murder, he vigorously argued -- from opening statement to summation -- Petitioner's innocence.  The record shows that counsel raised questions about the State's focus on Petitioner as the prime suspect in the crime by performing the following:  challenging the competency and thoroughness of the police investigation;  attempting to undermine the reliability and voluntariness of Petitioner's admissions to Feldman;  and attempting to undermine the credibility of the Bartletts, as well as the reliability of their testimony that Petitioner had confessed to them.  T.T. of 09/15/95, 26-41, 42-50; T.T. of 09/22/95, 798-822, 823-36.  In addition, trial counsel presented evidence that tended to show someone other than Petitioner may have had either the means or the motive to commit the murder.  T.T. of 09/22/95, 653-54, 656-59.  Trial counsel also presented evidence that tended to undermine the prosecution's theory that marital discord existed between Petitioner and Sherryl, and that such discord precipitated the killing.  T.T. of 09/22/95, 667-75, 694-95, 805.  Additionally, counsel presented evidence that tended to show that Petitioner

10

could not have understood his <u>Miranda</u> warnings, and was affected by anesthesia when he made damaging statements to police. T.T. of 09/22/95, 718, 727-28, 739-43. Cumulatively, the record shows that trial counsel presented a clear and consistent defense. Thus, Petitioner has failed to overcome the presumption that counsel's conduct concerning his choice of defense theories fell within the range of reasonable professional assistance. Because Petitioner cannot meet the first prong of <u>Strickland</u>, this Court need not address the second.

Accordingly, this Court finds that the state court's determination of this issue was neither contrary to nor an unreasonable application of clearly established federal law. The claim must be denied.

### b. Ineffective Assistance of Appellate Counsel

Petitioner also claims he was deprived of his Sixth Amendment right to effective assistance of appellate counsel. Petitioner contends, *inter alia*, that appellate counsel failed to competently research the case and, instead, relied heavily on the suppression brief filed in the trial court. Pet. ¶22A 7(d), Mem. 19-20. This claim was raised for the first time in Petitioner's leave application to the New York State Court of Appeals, which was summarily denied. <u>Russo</u>, 2 N.Y.3d at 806. Petitioner's failure to properly exhaust this claim in the state courts renders it unexhausted for habeas purposes. <u>See</u> 28 U.S.C. § 2254(b)(1); <u>see</u>

<u>also</u> <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) ("[p]resenting a claim for the first time to a state court of discretionary review is insufficient to exhaust the claim unless the court considers it."). Although Petitioner could still raise this claim in a *coram nobis* application, the claim is patently frivolous[4], and, as such, this Court will dispose of it on the merits notwithstanding Petitioner's failure to exhaust it in the state courts. <u>See</u> 28 U.S.C. § 2254(b)(2).

Here, Petitioner alleges he received constitutionally deficient performance from appellate counsel because she failed to research the case on her own. The record shows that appellate counsel raised four issues that were persuasively argued and supported by relevant case law, one of which was that Petitioner's statements should have been suppressed because they were illegally and involuntarily made. <u>See</u> Appellant's Brief [A.B.], 14-26. Notably, Petitioner does not argue that appellate counsel failed to raise the issue on appeal, but merely expresses his dissatisfaction with the way in which appellate counsel raised it (i.e., by borrowing portions from the suppression hearing brief). As Respondent correctly points out, however, the suppression brief

---

[4]     The Second Circuit has not yet articulated a standard for determining when unexhausted claims should be denied on the merits, but the majority of district court decisions in this Circuit have embraced a "patently frivolous" test for dismissing unexhausted claims. <u>See</u> <u>Naranjo v. Filion</u>, 02 Civ. 5449, 2003 U.S. Dist. LEXIS 6287, at *8 (S.D.N.Y. April 16, 2003)(citing cases). A claim is "patently frivolous" when it "lacks an arguable basis either in law or in fact." <u>See</u> <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (defining "frivolous" under 28 U.S.C. § 1915).

persuasively summarized the evidence adduced at the suppression hearing, and made various cogent arguments in support of suppression. Given the quality of that suppression brief, there was no need for Petitioner's appellate counsel to create a new point or modify the existing points for inclusion in her appellate brief. Thus, this claim is patently frivolous and cannot serve as a basis for habeas relief.

### 2. Fourth, Fifth and Sixth Amendment Claims Related to Admission of Petitioner's Statements

Petitioner contends that he was taken into custody without probable cause, and that his subsequent admission to killing his wife must, therefore, be suppressed as the fruit of an unlawful seizure. Additionally, he claims that the circumstances of his interrogation also violated his Fifth and Sixth Amendment rights. Pet. ¶22B, 7(d)-(f), Mem. 21-24. Petitioner raised this claim on direct appeal to the Appellate Division, and the claim was rejected on the merits. Respondent contends, and this Court agrees, Petitioner's Fourth Amendment claim is not cognizable on habeas review, and, in so far as he makes this claim out as a Fifth and Sixth Amendment violation, it lacks merit.

### a. Fourth Amendment Claim

In general, state court defendants are barred from obtaining habeas relief based upon Fourth Amendment claims. "Where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted habeas

13

corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976) (footnotes omitted). The Second Circuit has noted that Stone requires only that "the state have provided the *opportunity* to the state prisoner for full and fair litigation of the Fourth Amendment claim." Gates v. Henderson, 568 F.2d 830, 839 (2d Cir. 1977) (en banc), cert. denied, 434 U.S. 1038 (1978) (emphasis added). A Federal court may undertake habeas review only in one of two instances: (1) "if the state provides no corrective procedures at all to redress Fourth Amendment violations," or (2) if "the state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process. . . ." Id. at 840; accord Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992).

A petitioner receives a "full and fair opportunity" to litigate his Fourth Amendment claim where the state provides a "'statutory mechanism' for suppression of evidence tainted by an unlawful search and seizure." McPhail v. Warden, Attica Corr. Facility, 707 F.2d 67, 69 (2d Cir. 1983). Here, New York clearly affords defendants the requisite corrective procedures. See C.P.L. § 710.10 et seq.; see also Capellan, 975 F.2d at 70 (noting that federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in C.P.L § 710.10 et seq. as being facially adequate).

14

Here, Petitioner may not raise his Fourth Amendment claim on habeas review because he was provided with, and took full advantage of, the opportunity to fully adjudicate this matter in state court. Petitioner asserted this claim at a pre-trial suppression hearing, and the trial court determined, in relevant part, that there was probable cause to search Petitioner's residence and seize certain blood-stained items. The suppression court also determined that Petitioner's statements were not made involuntarily to police. The Appellate Division affirmed the trial court's determination of this issue.

Moreover, Petitioner cannot demonstrate that an "unconscionable breakdown" occurred in the courts below. His assertion that the trial court arrived at an incorrect conclusion on this issue does not constitute the sort of "breakdown" referred to in <u>Gates v. Henderson</u>. Nor is Petitioner's dissatisfaction with the outcome of the suppression hearing or the Appellate Division's affirmation thereof evidence of a "breakdown" in the state's procedures for litigating Fourth Amendment claims. Rather, an "unconscionable breakdown in the state's process must be one that calls into serious question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society." <u>Cappiello v. Hoke</u>, 698 F. Supp. 1042, 1050 (E.D.N.Y. 1988), <u>aff'd</u>, 852 F.2d 59 (2d Cir. 1988) (per curiam); <u>accord</u>, <u>Capellan</u>, 975 F.2d at 70 (observing that some sort

of "disruption or obstruction of a state proceeding" of an egregious nature, e.g., the bribing of a trial judge, typifies an unconscionable breakdown). No such disruption is discernable on the record. Even if the state court erroneously decided the issue, a petitioner cannot gain federal review of a Fourth Amendment claim simply because a Federal court may reach a different result. See Capellan, 975 F.2d at 71. Thus, this Court is precluded from considering Petitioner's fully litigated Fourth Amendment claim on habeas review.

### b. Fifth and Sixth Amendment Claims

Petitioner makes the following two related, but analytically distinct claims, regarding his statements to police: (1) that his statements were taken in violation of Miranda; and (2) regardless of Miranda, his statements were involuntary because they were obtained while he was suffering from injuries and under the effects of anesthesia. Pet. ¶¶22 7(d)-(f); Mem. 21-29.

### (1) Miranda Violation

It is well-settled Supreme Court law that when a defendant is in custody for purposes of Miranda, his statements are only admissible if he has knowingly, intelligently, and voluntarily waived his rights. See Oregon v. Mathiason, 429 U.S. 492, 495 (1977) (per curiam) (duty to give Miranda warnings is triggered "only where there has been such a restriction on a person's freedom as to render him 'in custody'"). Whether a defendant is in custody

is governed by a consideration of various factors, including whether a suspect is told that he is free to leave, the location and atmosphere of the interrogation, the language and tone used by the police, whether the suspect is searched, frisked, or patted down, and the length of the interrogation. See e.g., Campanieria v. Reid, 891 F.2d 1014, 1021 n.1 (2d Cir. 1989), cert. denied, 499 U.S. 949 (1991); Oregon, 429 U.S. at 494-95; United States v. Guarno, 819 F.2d 28, 31-32 (2d Cir. 1987); United States v. Wilson, 901 F. Supp. 172, 175 (S.D.N.Y. 1995); Berkemer v. McCarty, 468 U.S. 420, 437-38 (1984). "Two discrete inquiries are essential to the determination" of whether a defendant has been taken into custody for Miranda purposes: "first, what were the circumstances surrounding the interrogation; and second, given the circumstances, would a reasonable person have felt he or she not at liberty to terminate the interrogation and leave." Thompson v. Keohane, 516 U.S. at 112-13 (footnote omitted).

The suppression court found that Petitioner was not in custody any time during the ambulance ride en route to Erie County Medical Center ("ECMC") or during his questioning at ECMC[5]. Petitioner does not explicitly contest the trial court's finding, as affirmed

_____

[5]     The suppression court stated: "[d]efendant's freedom of movement may have been restricted by his medical condition. However, the fact that Investigator Feldman accompanied defendant in the ambulance did not create a custodial atmosphere. There was no conduct on Feldman's part which could lead a reasonable person in defendant's position to believe that he was not otherwise free to leave if he chose. I find that the defendant was not in custody in the ambulance en route to ECMC." Suppression Decision, 8.

by the Appellate Division, but he does contend that there was a "continuous and imposing police presence" with him from the time he was transported from his home to the hospital. The record, however, belies this claim. The record reflects that at no time during the ambulance ride did the police take any actions that would lead Petitioner to believe that he was not at liberty to terminate Feldman's interrogation. Feldman's questions were generally innocuous,[6] and, when Petitioner turned away and did not answer these questions, Feldman did not continue with his inquiry. Furthermore, and of particular note, Feldman was dressed in plain clothes, his service weapon was not visible, and Petitioner was not handcuffed. T.T. of 01/04/94, 10-11.

Moreover, the circumstances of the questioning did not change upon Petitioner's arrival at ECMC. The suppression court determined that the questioning of defendant in the hospital examination room was not custodial[7]. This finding is supported by the record as well, which shows that Feldman reminded Petitioner of his Miranda rights in the hospital room, Petitioner acknowledged having heard them, and Feldman then proceeded to question Petitioner about his relationship with his wife and his whereabouts

---

[6]    Feldman inquired about Petitioner's recent family vacation to Florida. T.T. of 01/04/94, 10.

[7]    The suppression court stated: "[t]here was no conduct on Feldman's part that would have lead [sic] a reasonable person, innocent of any crime, to believe that he was not otherwise free to go. I find that the questioning of defendant in the examination room was not custodial." Suppression Decision, 9.

prior to the crime. T.T. of 01/04/94, 12-13. At no point did this questioning become accusatory in nature, which would have required re-administration of his <u>Miranda</u> rights. T.T. of 01/04/94, 14-15; <u>see</u> <u>Tankleff v. Senkowski</u>, 135 F.3d 235, 244 (2d Cir. 1998) (finding re-adminstration of <u>Miranda</u> warnings required where defendant was told that someone accused him of crime and questioning became accusatory).

Similarly, in the hours after Petitioner's surgery, nothing changed the nature of Feldman's interaction with Petitioner. The suppression court determined that Petitioner was not in custody when he made statements to the police after his surgery.[8] This finding is also supported by the record, which shows that Feldman waited to question Petitioner until after he had recovered from the effects of anesthesia. T.T. of 01/04/94, 18-19. Furthermore, when Feldman eventually told Petitioner -- in response to Petitioner's inquiry that Sherryl had died -- Petitioner began to sob and admitted killing her. T.T. of 01/04/94, 19-21. Thus, the state court's determination that Petitioner was not in custody at any time during the ambulance ride en route to ECMC or during his questioning at ECMC, and thus no <u>Miranda</u> violation, did not contravene or unreasonably apply Supreme Court law.

---

[8] The suppression court stated: "[a]lthough defendant was not entirely free to go due to his medical condition, there was still no conduct on the part of the police which would have lead [sic] a reasonable person, innocent of any crime, to believe that he was not free to go. Therefore, I find that defendant was not in custody when he made the statements to the police after his surgery at [ECMC]." Suppression Decision, 11.

### (2)  Voluntariness of Statements

If a defendant's confession was obtained by "'techniques and methods offensive to due process,' . . . or under circumstances in which the suspect clearly had no opportunity to exercise 'a free and unconstrained will,'" the statements are inadmissible under the Fifth Amendment.  <u>Oregon v. Elstad</u>, 470 U.S. 298, 304 (1985) (quoting <u>Haynes v. Washington</u>, 373 U.S. 503, 514-15 (1963)).  The Supreme Court has held that to determine the voluntariness of a confession, a court should look to the totality of the circumstances in which the confession was given, to ascertain their effect upon the suspect's will.  <u>Arizona v. Fulminante</u>, 499 U.S. 279, 282-89 (1991); <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226 (1973).  This includes Petitioner's background and experience, the conditions of the interrogation, and the conduct of the law enforcement officers.  <u>United States v. Ruggles</u>, 70 F.3d 262, 265 (2d Cir.), <u>cert. denied</u>, 516 U.S. 1182 (1996).

Here, Petitioner contends that his statements were involuntary because they were obtained while he was suffering from injuries and was under the effects of anesthesia.  The suppression court found that the circumstances surrounding Petitioner's statements did not render them involuntary.  The record supports this finding, as affirmed by the Appellate Division, which shows that Feldman did not take advantage of Petitioner's condition following surgery.  Rather, he postponed speaking to Petitioner until Petitioner was

more alert. T.T. of 01/04/94, 17-18. Furthermore, Feldman's questioning was not accusatory or threatening in nature. Rather, his response to Petitioner's question whether Sherryl was alive or not elicited Petitioner's confession, and nothing in this interaction between Feldman and Petitioner was so "offensive to due process" or so likely to bear upon Petitioner's "free and unrestrained will" as to violate his constitutional rights. Elstad, 470 U.S. at 304.

Thus, the state court's rejection of this claim was not contrary to or an unreasonable application of settled Supreme Court law.

### 3.    Right to be Present at all Stages of Proceedings

Petitioner contends he was denied his constitutional right to be present at all material stages of his trial when he was excluded from certain sidebar conferences and legal discussions, and from proceedings regarding the court's responses to jury notes. Pet. ¶22C, 7(f), Mem. 29-32. Petitioner raised this claim on direct appeal to the Appellate Division, and it was rejected on the merits.

After a reconstruction hearing on this issue, the Appellate Division made the following findings of fact:

> [t]he record of the reconstruction hearing
> supports the court's determination that
> defendant was present at all material
> stages of the trial. The proceedings from
> which defendant may have been absent
> concerned questions of law, scheduling

> matters or juror requests for physical evidence, and thus there was no "potential for meaningful input by" defendant during those proceedings.

Russo, 4 A.D.3d at 778 (internal citations omitted).

These findings of fact are presumed to be correct unless a Petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Petitioner has failed to do so.

A defendant in a state criminal trial "has a right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." Faretta v. California, 422 U.S. 806, 819 n.15 (1975). This right, however, is not absolute; it is triggered only when the defendant's presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." Snyder v. Massachusetts, 291 U.S. 97, 105-06 (1934). As a result, there is no constitutional right to be present "when such presence would be useless, or the benefit but a shadow." Id. at 106-07.

The facts support the trial court's determination, as affirmed by the Appellate Division, that Petitioner was present at all material stages of the trial and that any proceedings he was absent from concerned legal or scheduling matters at which he had no constitutionally protected right to be present. The record reflects that of the 22 conferences at issue, all involved either

scheduling matters or legal issues.[9]  Russo, 4 A.D.3d at 777.

Thus, this Court cannot find that the trial court's determination, and the Appellate Division's affirmation thereof, is contrary to or an unreasonable application of settled Supreme court law.

### 4. Prosecutorial Misconduct

Petitioner alleges that prosecutorial misconduct deprived him of his constitutional right to due process. In particular, he argues that the prosecutor made improper arguments in summation, allowed witnesses to present false testimony at trial, and failed to disclose exculpatory evidence in violation of Brady and Giglio. Pet. ¶22D 7(g)-(h), Mem. 32-37. Petitioner raised this claim on direct appeal to the Appellate Division, and it was rejected on the merits.

It is well settled that, in order to obtain habeas relief based upon the misconduct of a prosecutor, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks and citation omitted). A constitutional violation will be found only when the prosecutor's remarks "so infected the trial with unfairness as to make the resulting

_____

[9] In its Decision, the court considered the conferences chronologically as set forth in the transcript. Conferences numbered 1, 4-6, 9-13, 15-17, and 19-22 all concerned various legal issues related to jury selection, jury instructions, or evidentiary rulings. Conferences numbered 2, 3, 7, 8, 12, 14, 15, and 18 all involved, in whole or in part, various scheduling issues.

conviction a denial of due process." <u>Gonzalez v. Sullivan</u>, 934 F.2d 419, 424 (2d Cir. 1991) (quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974)).

Moreover, a prosecutor's remarks during summation are grounds for reversal "only when the remarks caused substantial prejudice to the defendant." <u>Id.</u> (citations omitted). Whether the comments caused substantial prejudice to the petitioner is to be assessed by considering "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." <u>Floyd v. Meachum</u>, 907 F.2d 347, 355 (2d Cir. 1990) (quoting <u>United States v. Modica</u>, 663 F.2d 1173, 1181 (2d Cir. 1981), <u>cert. denied</u>, 456 U.S. 989 (1982)). And, the challenged remarks must be evaluated in the context of the trial as a whole, for the government is allowed to respond to an argument that impugns its integrity or the integrity of the case. <u>See United States v. Bagaric</u>, 706 F.2d 42, 60-61 (2d Cir. 1983), <u>cert. denied</u>, 464 U.S. 840 (1983). Thus, when the defense has "attacked the prosecutor's credibility or the credibility of the government agents, the prosecutor is entitled to reply with 'rebutting language suitable to the occasion.'" <u>United States v. Praetorius</u>, 622 F.2d 1054, 1060-61 (2d Cir. 1979) (quoting <u>United States v. LaSorsa</u>, 480 F.2d 522, 526 (2d Cir. 1973), <u>cert. denied</u>, 414 U.S. 855 (1873)), <u>cert. denied</u>, 449 U.S. 860 (1980).

### a.  Summation

Petitioner contends the prosecutor acted improperly on summation by (1) arguing facts not in evidence; (2) vouching for the credibility of his witnesses by urging the jury to accept certain evidence and disregard other evidence; and (3) interjecting his personal opinions of Petitioner's guilt by occasionally using phrases such as "I think" or stating that the evidence proved Petitioner's guilt beyond a reasonable doubt. Notably, however, in each of these three instances, the prosecutor's comments were made in rebuttal to defense counsel's arguments on summation. Moreover, any prejudice that may have resulted from these comments was mitigated by the court's curative instruction to the jury that attorneys' summations are only arguments and can be accepted or rejected by the jurors.  T.T. of 09/22/95, 883-84.

Accordingly, the prosecutor's summation, as a whole, was not inflammatory or intemperate.  The proof against Petitioner was compelling enough that the above isolated remarks in an otherwise fair proceeding did not deny Petitioner of a fair trial.  The Appellate Division's denial of Petitioner's prosecutorial misconduct claim was neither contrary to nor an unreasonable application of settled Supreme Court law.

### b.  **Brady**, **Giglio**, **and Perjured Testimony**

Petitioner also alleges that the prosecutor suborned perjured testimony from the Bartletts, Feldman, and the crime scene

investigators.  With respect to Bartlett, Sr., in particular, he also contends that the prosecutor violated his disclosure obligations under <u>Brady</u>[10] and <u>Giglio</u>[11] by concealing a letter that establishes that Bartlett, Sr. lied when he denied that any promises had been made to him in exchange for his testimony.[12]

In <u>Brady</u>, the Supreme Court held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or punishment." <u>Brady</u>, 373 U.S. at 87.  This includes the duty to disclose material impeachment evidence, including promises that the prosecution has made to key witnesses in exchange for his testimony.  <u>Giglio</u>, 405 U.S. at 154-55.  In either context, withheld evidence is "material" if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.  <u>Kyles v. Whitley</u>, 514 U.S. 419, 433-34 (1995); <u>United States v. Bagley</u>, 473 U.S. 667, 674-78, 682 (1985).  Here, the record reflects the existence of a letter sent from Bartlett, Sr.'s counsel, Robert R. Kinne, Esq., to ADA Robinson wherein he sought a favorable plea deal for his client in exchange for his client's testimony, but never, in fact,

---

[10]    <u>Brady v. Maryland</u>, 373 U.S. 83 (1963)

[11]    <u>Giglio v. United States</u>, 405 U.S. 150 (1972)

[12]    By implication, Petitioner also contends Robinson perjured himself at trial because Robinson testified that no such deal had been made to Bartlett, Sr. in exchange for his testimony.

obtained.[13]  This Court has reviewed the record in its entirety and cannot find any evidence, other than this letter, that supports Petitioner's claim that Bartlett, Sr. was, in fact, given any consideration for his testimony in the present case.  For this reason, Petitioner's claim must fail.

In any event, even if there were any basis for a claim that the letter should have been disclosed, Petitioner still cannot prevail on this claim because it is unlikely that the disclosure of this letter would have altered the outcome of the trial.  See Kyles, 514 U.S. at 433-434.  The record reflects that Petitioner's counsel questioned Bartlett, Sr. and Robinson, at length, about the circumstances surrounding Bartlett, Sr.'s guilty plea, and his receipt of a 3-6 year sentence for attempted robbery.  T.T. of 09/20/95, 494-503.  Additionally, counsel argued on summation that Bartlett, Sr.'s motivation in testifying was to curry favor with the prosecution to avoid being sentenced as a persistent felony offender.  T.T. of 09/22/95, 799-809.  Because this evidence was before the jury, it is unlikely that the disclosure of the letter would have had any impact on the jury's verdict.  See Lyon v. Senkowski, 109 F. Supp.2d 125, 139 (W.D.N.Y. 2000) (finding "[e]vidence is not material under Brady if it 'merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable.'") (quoting United

---

[13]     On the bottom of this letter, it is written: "Jim [the District Attorney] said the answer is no."  See Letter of February 18, 1994.

States v. Amiel, 95 F.3d 135, 145 (2d Cir. 1996) (citations omitted))).

Regarding Petitioner's additional contentions that the prosecutor knowingly relied on perjured testimony throughout the trial, this Court has reviewed the record and finds nothing to substantiate this claim.

Thus, the state court's determination of this issue did not contravene or unreasonably apply settled Supreme Court law.

### 5.  Erroneous Evidentiary Rulings and Jury Instructions

Petitioner contends that his due process right to a fair trial was violated by a number of the trial court's evidentiary rulings and jury instructions. Pet. ¶22E 7(h), Mem. 37. Petitioner raised this claim to the Appellate Division, Fourth Department, and it was rejected on the merits. Respondent contends, and this Court agrees, this claim is a matter of state law and, as such, is not cognizable on habeas review.

A state court's evidentiary rulings, even if erroneous under state law, generally do not present constitutional issues cognizable in a habeas corpus petition. See Crane v. Kentucky, 476 U.S. 683, 689 (1986) ("[w]e acknowledge . . . our traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts."). Thus, "[i]n order to prevail on a claim that an evidentiary error deprived [a] defendant of due process . . . he must show that the error was so pervasive

as to have denied him a fundamentally fair trial." <u>Collins v. Scully</u>, 755 F.2d 16, 18 (2d Cir. 1985); <u>see also</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 72 (1991); <u>Aponte v. Scully</u>, 740 F. Supp. 153, 158 (E.D.N.Y. 1990) (Petitioner seeking habeas corpus relief claiming the erroneous admission of evidence "bears a heavy burden; mere evidentiary errors generally do not rise to constitutional magnitude.").

Moreover, the propriety of a state trial court's instructions to a jury is ordinarily a matter of state law that does not raise a federal constitutional question. <u>See</u> <u>Cupp v. Naughten</u>, 414 U.S. 141, 146 (1973); <u>United States ex rel. Smith v. Montayne</u>, 505 F.2d 1355, 1359 (2d Cir. 1974), <u>cert. denied</u>, 423 U.S. 856 (1975). Even if a jury instruction is improper under state law, federal habeas corpus relief is unavailable unless the instruction also violated the petitioner's rights secured by the constitution, laws, or treaties of the United States. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 71-72 (1991) (claim that jury instruction was incorrect is matter of state law and is not basis for habeas relief). To be entitled to federal habeas relief, a petitioner must show not merely that a particular jury instruction is "undesirable, erroneous, or even 'universally condemned,'" but also that it violated some right that was guaranteed to him by the federal constitution. <u>Cupp</u>, 414 U.S. at 146. "The question is whether 'the ailing instruction by itself so infected the entire trial that

the resulting conviction violates due process.'" <u>Grey v. Henderson</u>,

788 F. Supp. 683, 693 (E.D.N.Y. 1991), <u>aff'd</u>, 956 F.2d 1161 (2d

Cir. 1992) (quoting <u>Cupp</u>, 414 U.S. at 147).

In this case, Petitioner cannot establish that he was denied

a fundamentally fair trial by the alleged erroneous evidentiary

rulings and/or the trial court's jury instructions. This Court has

reviewed each of these claims, individually and collectively, and

concludes that, if erroneous at all, these evidentiary rulings and

jury instructions do not, individually and/or collectively, give

rise to a deprivation of Petitioner's constitutional rights. Thus,

the state court's determination of this claim was neither contrary

to nor an unreasonable application of settled Supreme Court law.

### 6. Insufficiency of the Evidence[14]

Petitioner argues that the evidence at trial was insufficient

to support the charge of Second Degree Murder. In particular, he

points to the following to support his contention: (1) the lack of

physical evidence or fingerprints linking him to the crime;

(2) flaws in the police investigation that led to a contaminated

crime scene; (3) contradictions between the crime scene photographs

and some of the witness testimony; and (4) the lack of credibility

---

[14] This Court notes, at the outset, that Petitioner purports to raise an insufficiency of the evidence claim. However, the facts supporting his claim are grounded in the notion that the verdict was against the weight of the evidence, not that the evidence was insufficient to support the conviction. Because these theories pose two legally distinct arguments, this Court will address the claim, in turn, as both an "insufficiency of the evidence" claim and a "weight of the evidence" claim.

of the testimony of the jailhouse informants. Pet. ¶22F, 7(I). Petitioner raised this claim on direct appeal, and it was rejected on the merits.

The law concerning sufficiency of the evidence is well-settled: the reviewing court's inquiry is limited to asking whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); accord, e.g, People v. Contes, 60 N.Y.2d 620, 621 (1983). This sufficiency of the evidence "inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993).

A review of the proof submitted in this case establishes that there was sufficient evidence for the jury to find, beyond a reasonable doubt, that Petitioner committed second degree murder. First, Petitioner was discovered at the crime scene -- with seemingly self-inflicted wounds -- and there was no evidence suggesting that anyone else had been in the house at the time of the murder. Second, Petitioner confessed to Feldman at the hospital and to two jailhouse informants that he killed his wife. Third, Petitioner was shown to have a motive for the murder (i.e., the impending breakup of his marriage).

Considering all of the evidence in the light most favorable to the prosecution and drawing all reasonable inferences in its favor and deferring to the jury's assessment and resolution of conflicting accounts of the facts, this Court cannot say that the jury's guilty verdict was not rational. See United States v. Carson, 702 F.2d 351, 361 (2d Cir. 1983) (a court must determine "whether the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt . . . view[ing] the evidence in the light most favorable to the government, and constru[ing] all permissible inferences in its favor") (internal citations omitted), cert. denied sub nom. Mont v. United States, 462 U.S. 1108 (1983). Thus, the state court's determination on this issue was neither contrary to nor an unreasonable application of settled Supreme Court law.

Moreover, this Court notes that although Petitioner, in name, challenges the sufficiency of the evidence, he, in substance, challenges the weight of the evidence by urging this Court to overturn the jury's credibility findings. To this extent, the claim is not cognizable on habeas review. Challenges to the weight of the evidence supporting a conviction, unlike challenges to the sufficiency of the evidence, are not cognizable on federal habeas review. Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996). A claim that a verdict was against the weight of the evidence derives

from C.P.L. § 470.15(5), which permits an appellate court in New York to reserve or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." C.P.L. § 470.15(5). Thus, the "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles. People v. Bleakley, 69 N.Y.2d 490, 495 (1987). Since a weight of the evidence claim is purely a matter of state law, it is not cognizable on habeas review. See U.S.C. § 2254(a); Estelle, 502 U.S. at 68 ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

This claim, therefore, must be denied.

## V.  Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2),  I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and

therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:      October 26, 2009
            Rochester, New York